

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
05/15/2009

| | |
|---|---|
| IN RE: § | |
| MARCO A. CANTU § | CASE NO: 08-70260 |
| and § | |
| MAR-ROX, INC., MARCO A. CANTU, § | |
| ROXANNE CANTU § | |
|     Debtor(s) § | |
| § | CHAPTER 11 |

**MEMORANDUM OPINION AND ORDER ON MOTION FOR ALLOWANCE OF
CLAIM FOR VOTING PURPOSES**

On this day came on for consideration the Amended Motion to Allow the Claim for Purpose of Accepting or Rejecting Debtors' Plan of Reorganization filed by Howard S. Grossman, P.A. ("Grossman"), which the Court will treat as a motion for claims estimation pursuant to 11 U.S.C. §502(c). The Court, having heard the evidence and arguments of counsel, and having reviewed the pleadings and briefs on file herein, finds as follows:

### BACKGROUND

Grossman sued the Debtor, Marco Cantu ("Cantu") in Florida State Court for tortious interference with the attorney/client relationship. Cantu filed an answer *pro se*. Later, Cantu's Florida attorney made at least four appearances on behalf of Cantu at hearings involving discovery disputes. Cantu's pleadings were ultimately stricken by the Florida Trial Court after Cantu disobeyed six Orders of the Florida Trial Court. A Final Judgment was entered against Cantu on January 7, 2004, in the amount of $1,349,665.00, to which was later added a judgment for attorney's fees of $25,530.00, on June 23, 2004, and judgment for appellate attorney's fees of $128,605.64, on December 7, 2006.

Cantu appealed the Final Judgment to the District Court of Appeals in the State of Florida, Second District (the "Florida Court of Appeals"), raising two points on appeal: 1) that Florida lacked *in personam* jurisdiction over him and, 2) that he was improperly sanctioned for contumaciously disobeying repeated orders of the court. On May 4, 2005, the Florida Court of Appeals affirmed the Florida Trial Court's rulings in favor of Grossman and rejected Cantu's points of error. Cantu's Motion for Rehearing was denied

Grossman then sought to enforce his judgment in Texas. He filed his domestication action in Harris County, Texas. Cantu responded by filing his Motion to Transfer Venue, and Subject Thereto, Motion for New Trial, Alternatively, Motion for Denial of Recognition of Foreign Judgment in the Harris County District Court. The Harris County District Court denied the Motion and Cantu appealed. The Court of Appeals for the 14th District of Harris County reversed the Harris County District Court's ruling on venue and held that proper venue of the foreign judgment enforcement action was Hidalgo County, Texas, where Cantu resides. The case was remanded to the Harris County District Court for transfer of venue.

Thereafter, Cantu filed his chapter 11 bankruptcy petition. Grossman filed a proof of claim in the case for the total amount of $2,100,986.50. Cantu filed an Objection to Grossman's proof of claim which has been abated pending the State Court appeal relating to Cantu's complaints about the domestication of the Florida Judgments in Texas. Grossman seeks estimation of his claim against Cantu for voting purposes.

## DISCUSSION

### 1. BANKRUPTCY CODE PROVISIONS FOR ESTIMATION OF CONTINGENT OR UNLIQUIDATED CLAIMS

Section 502(c) of the Bankruptcy Code provides, in pertinent part, that "[t]here shall be estimated for purpose of allowance under this section– (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ." 11 U.S.C. § 502(c)(1) (2005). Section 502(c) was enacted to "further the requirement that all claims against a debtor be converted into dollar amounts." *Interco Inc. v. ILGWU Nat'l Ret. Fund (In re Interco Inc.)*, 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992). Courts use estimation "to facilitate the speedy resolution of claims in bankruptcy courts." *Id*.

Estimation serves at least two purposes. It helps "avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions." *First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1053 (5th Cir. 1992). Estimation also "promote[s] a fair distribution to creditors through a realistic assessment of uncertain claims." *Id*. The principal consideration in an estimation proceeding must be an accommodation of the underlying purposes of the Bankruptcy Code. *Bittner v. Borne Chem. Co*., 691 F.2d 134, 135 (3d Cir. 1982).

**2. ESTIMATION METHODS**

The Bankruptcy Code does not establish the method for estimating contingent or unliquidated claims. While the Bankruptcy Code is silent on the methodology that the Court should employ in estimating a claim, the Code provides the Court with wide discretion regarding the methodology that it may employ and as a result, the courts have consistently ruled that a bankruptcy court may use whatever method and procedures are appropriate to estimate the particular claim. *See, e.g., In re Brints Cotton Marketing,*

*Inc.,* 737 F.2d at 1341; *Bittner,* 691 F.2d at 135; *In re Continental Airlines, Inc.*, 57 B.R. 842, 845 (Bankr. S.D. Tex. 1985).

The Fifth Circuit has stated that the bankruptcy court should use "whatever method is best suited to the circumstances" in estimating a claim. *In re Brints Cotton Mktg.*, 737 F.2d at 1341; *see also Bittner*, 691 F.2d at 135 (the bankruptcy court should use "whatever method is best suited to the particular contingencies at issue."); *In re Eagle Bus Mfg.*, *Inc.,* 158 B.R. at 437 (citing *Brints Cotton*).

> In reviewing the method by which a bankruptcy court has ascertained the value of a claim under section 502(c)(1), an appellate court may only reverse if the bankruptcy court abused its discretion. That standard of review is narrow. The appellate court must defer to the congressional intent to accord wide latitude to the decisions of the tribunal in question.

*Bittner*, 691 F.2d at 136 (footnotes omitted).

Courts have utilized a variety of different procedures for estimation proceedings, "run[ning] the gamut from summary trials to full-blown evidentiary hearings to a mere review of pleadings, briefs, and a one-day hearing involving oral argument of counsel." *In re Windsor Plumbing Supply Co*., 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994) (citations omitted).[1]

In the *Bittner* case, the Third Circuit Court of Appeals affirmed an estimation approach that evaluated the "ultimate merits" of the claims in question, which the bankruptcy court estimated to be zero. *Bittner*, 691 F.2d at 135. The Third Circuit noted that the bankruptcy court's findings "plainly indicated that the [claim at issue] lacked

---

[1] *See, e.g., In re Eagle Bus Mfg*., 158 B.R. at 437 (court conducted a mini-trial; parties were given seven hours each to present evidence and testimony by affidavit with live cross-examination, and were permitted to introduce into evidence documents, charts, summaries and other visual aids); *In re MacDonald*, 128 B.R. 161, 166-67 (Bankr. W.D. Tex. 1991) (court approved a "summary trial" procedure involving proffers of evidence and limited live testimony); *In re Nova Real Estate Inv. Trust*, 23 B.R. 62, 65 (Bankr. D. Va.) (court heard eight days of testimony prior to estimating claim).

legal merit" and that as result, the court's estimation of the claims at zero "was consistent both with the claims' present value and with the court's assessment of the ultimate merits." *Id*. at 139. "Assuming however that the bankruptcy court did estimate their claims according to their ultimate merits rather than the present value of the probability that they would succeed in their state court action, we cannot find that such a valuation method is an abuse of the discretion conferred by section 502(c)(1)." *Id*. at 136 (footnote omitted). Other courts also have used the "ultimate merits" approach to estimating claims.[2]

Some courts estimating claims have focused on a probabilistic methodology in which "[t]he estimated value of the claim is . . . the amount of the claim diminished by probability that it may be sustainable only in part or not at all." *In re Windsor Plumbing,* 170 B.R. at 521 (estimating asserted claim of $3,502,860 at $145,000).[3] A 1997 Wake

---

[2] *See, e.g., Ryan v. Loui (In re Corey)*, 892 F.2d 829, 834 (9th Cir. 1989) (estimating claims at zero because of their "highly speculative nature"); *In re Pac. Gas & Elec. Co*., 295 B.R. 635, 675-76 (Bankr. N.D. Cal. 2003) (estimating antitrust claims at zero where claimants failed to make their case, the debtor asserted defenses that appeared to have merit, and the claimants had not established any meaningful measure of damages); *In re Kaplan*, 186 B.R. 871, 874, 878 (Bankr. D. N.J. 1995) (noting that "the court must determine the value of the claim according to its best estimate of the claimant's chances of ultimately succeeding in a state court action" and estimating the claim at zero because the claimant "most likely would not succeed on a state court action"); *In re Thomson McKinnon Secs., Inc*. 143 B.R. 612, 621 (Bankr. S.D.N.Y. 1992) (pursuant to section 502(c)(1) of the Bankruptcy Code, court disallowed claim in its entirety because claimant "failed to establish by a preponderance of the evidence" its causes of action against the debtor); *In re The Bible Speaks*, 65 B.R. 415, 427 (Bankr. D. Mass. 1986) (selecting the "ultimate merits" method "because of its fairness and finality"); *In re Baldwin-United Corp*., 55 B.R. 885, 903, 911 (Bankr. S.D. Ohio 1985) (disallowing claims in their entirety in estimation proceedings where court found it more probable than not that the claims would be dismissed in the court where they were pending).

[3] *See also In re Wallace's Bookstores, Inc*., 317 B.R. 720, 726 (Bankr. E.D. Ky. 2004) (determining that "the estimation process should take into account the likelihood that the claimant would prevail on the merits and apply that probability to the amount of the damage."); *In re Farley, Inc*., 146 B.R. 748, 754 (Bankr. N.D. Ill. 1992) (estimating claims of personal injury claimants and contribution claims arising out of an explosion at $1.25 million "by taking the stipulated figure for damages [$5 million] and then discounting that figure by the high probability that Farley will not be found liable in tort under Illinois law.").

Forest Law Review article[4] titled "A Statistical Approach to Claims Estimation in Bankruptcy" by Salsburg and Williams discusses seven different estimation models, including (1) the face value method which estimates future claims at the face amount of the claim; (2) the zero value method which estimates the claim at zero but then exempts the claim from discharge; (3) the market theory model which estimates the claim at its market value if you can determine such a thing;[5] (4) the forced settlement model which estimates the claim at an amount that parties would be willing to accept in a hypothetical settlement;[6] (5) the discounted value model which estimates the claim at the face amount discounted by the probability of prevailing; (6) the summary trial model which estimates the claim after an abbreviated hearing but employs traditional standards of proof; and (7) the statistical model which is essentially the discounted value model using statistical methods to more accurately predict values. The authors recommend the statistical model as the most useful and coherent approach.

In accordance with the evidence presented at the hearing, the Court agrees that the probabilistic approach is the most useful in this case, but also has reviewed the evidence presented in light of other models to estimate the value of the claim.

### 3. ESTIMATION OF GROSSMAN'S CLAIM

---

[4] David S. Salsburg and Jack F. Williams, *A Statistical Approach to Claims Estimation in Bankruptcy*, 32 Wake Forest L. Rev. 1119 (1997).

[5] This test has been criticized for being too hypothetical. Because there is no established market for environmental claims, "courts must conjure up hypothetical markets. One legal fiction builds on another without thought to the internal coherence of the model." Salsburg & Williams, 32 Wake Forest L. Rev. at 1134; *see also* Alison J. Brehm, David N. Copas, Jr., and Colleen Kotyk Vossler, *To Be, or Not to Be: The Undiscovered Country of Claims Estimation in Bankruptcy*, 8 J. Bankr. L. & Prac. 197, 252-53 (1999).

[6] The "forced settlement" method also has been criticized as too hypothetical and difficult to apply because the variety of unquantifiable factors that go into a decision to settle make it very hard to value a hypothetical settlement. *See, e.g.*, Brehm, Copas, & Vossler, 8 J. Bankr. L. & Prac. at 253.

In this case, based on the probability of ultimate success, the Court finds that Grossman's claim should be estimated in its full face value of $2,100,986.50. The evidence suggests that Cantu submitted to the jurisdiction of the Florida Trial Court by filing an answer, and by the appearance of his attorney at numerous hearings. Moreover, Cantu raised the issue of personal jurisdiction, as well as contesting the sanctions award, at the Florida Appellate Court level. The Florida Court of Appeals affirmed the Florida Trial Court.

The Florida judgments are final orders. The facts of this case strongly suggest that the Florida judgments are entitled to full faith and credit in Texas. The leading case interpreting the meaning of the full faith and credit clause of the United States Constitution is *Durfee v. Duke*, 375 U.S. 106 (1963). The *Durfee* court concluded that once a matter, including jurisdiction, has been fully litigated and judicially determined, it cannot be re-litigated in another state between the same parties. Texas courts recognize the *Durfee* holding, acknowledging that each state must give full faith and credit to the judgments of another state. *Bard v. Charles R. Meyers Ins. Agency*, 839 S.W. 2d 791 (Tex. 1992). The scope of the inquiry into a foreign judgment's jurisdiction is limited to the question of whether the jurisdiction was fully and fairly litigated and finally decided by the court which rendered the original judgment. If so, the question of personal jurisdiction cannot be raised again in a Texas court. *Merritt v. Harlis*, 685 S.W. 2d 708 (Tex.App.—Dallas, 1984, no writ); *Roark v. Swigart*, 848 S.W.2d 837 (Tex.App.—Amarillo, 1993, no pet.). Here, Cantu contested jurisdiction and the merits of the sanctions at the Florida Court of Appeals. He was unsuccessful. This Court doubts that any Texas Court would allow a collateral attack on the final judgment from Florida.

Moreover, this Court is precluded from exercising appellate jurisdiction over the final, non-appealable Florida Judgment under the *Rooker-Feldman* doctrine. *Lance v. Dennis*, 546 U.S. 459, 463 (2006). Under *Rooker-Feldman*, "lower federal courts lack the power to modify or reverse state court judgment because 28 U.S.C. §1257 vests exclusive jurisdiction to review or modify a state court judgment in the Supreme Court." *LAC Real Estate Holdings, LLC v. Biloxi Marsh Lands Corp.*, 2009 FL 937165 *2 (5th cir. 2009). *Rooker-Feldman* is designed to prevent a losing party from complaining of injuries caused by a state court judgment and seeking review and rejection of the judgment. *Dean v. Mississippi Board of Bar Admissions*, 2009 WL 1262430 *2 (5th Cir. 2009).

When this case is viewed under the light of the full faith and credit clause of the United States Constitution, cases interpreting that clause, and the *Rooker-Feldman* doctrine, this Court must conclude that the probability for success lies with Grossman and his claim should be estimated in the full amount for voting purposes.

## CONCLUSION

For the reasons stated above, the Court finds that Grossman's request for estimation of his claim for voting purposes should be granted and the claim should be estimated at its face amount of $2,100,986.50.

IT IS SO ORDERED.

Dated: 05/15/2009

_____
RICHARD S. SCHMIDT
United States Bankruptcy Judge