

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
01/19/2011

| | | |
|---|---|---|
| IN RE: | § | |
| MARCO A. CANTU, ROXANNE CANTU | § | CASE NO: 08-70260 |
| | § | |
| MAR-ROX, INC. | § | CASE NO: 08-70261 |
| | § | Jointly Administered Order |
| Debtor(s) | § | |
| | § | CHAPTER 7 |

**MEMORANDUM OPINION ON DEBTORS' MOTION TO CLARIFY ORDER
APPROVING COMPROMISE AND SETTLEMENT
<u>AGREEMENT AND TRUSTEE'S MOTION FOR TURNOVER</u>
(Docket #'s 1911, 1913)**

On this day came on for consideration the Motion to Clarify Order Approving Compromise and Settlement Agreement filed by the Debtors, Marco A. Cantu and Roxanne Cantu (the "Debtors") and the Trustee's Motion for Turnover. The Court, having heard the evidence and arguments of counsel finds as follows.

## BACKGROUND

The Debtors filed their chapter 11 bankruptcy petition on May 6, 2008. The Debtors' corporation, Mar-Rox, Inc. also filed its chapter 11 bankruptcy petition on that same date. The cases were jointly administered by order entered November 5, 2008 (the filing parties are collectively referred to as "Debtors").

On February 12, 2009, International Bank of Commerce ("IBC") and Debtors filed an Agreed Motion for Approval of Compromise and Settlement which requested court approval of a compromise and settlement between Debtors and IBC. This Court approved the compromise and settlement by order entered on February 26, 2009 (docket #714, the "Settlement Order"). The Settlement Order provides that the terms of the settlement agreement 'shall be binding on the Parties and all parties having notice hereof and upon the successors and assigns of the Parties

hereto, including, without limitation, any trustee appointed in the Bankruptcy Cases or any subsequent proceeding." Howard S. Grossman, P.A. filed a Motion for Reconsideration of the Settlement Order on March 6, 2009. The Motion to Reconsider was denied. No further action was taken and the Settlement Order was not appealed.

On June 24, 2009, the Debtors' cases were converted to Chapter 7 and Michael B. Schmidt was appointed Chapter 7 Trustee (the "Trustee'). The Trustee has operated the Estates and proceeded with liquidation and disposition of assets since his appointment.

On April 20, 2010, Guerra & Moore, Ltd. filed a Joint Motion to Clarify Compromise and Settlement by and among IBC, Mark A. Cantu, Roxanne P. Cantu and Mar-Rox, Inc. A hearing was held on June 23, 2010. This Court stated, in clarifying the Settlement Order, that "[t]he deal made with IBC was that out of the cases, then existing and in the future, the [IBC] would get paid certain percentages." Debtor Mark A. Cantu appeared at the hearing and did not object.

IBC and the Trustee have now discovered that Debtor Mark A. Cantu has an interest in the settlement funds of a personal injury case in Webb County, Texas. The evidence shows that Debtor already received a portion of the funds and did not disclose them to any of the parties hereto. There is an additional amount of money being held in the trust account of John Skaggs to which the Debtors, IBC, and the Trustee all claim to be entitled.

On October 12, 2010, the Trustee filed a Motion for turnover of Property of Debtor's Portion of Fees from Settlement Proceeds to Satisfy Unpaid Sanction Order. (the "Turnover Motion"). On October 13, 2010, Debtors filed their Motion to Clarify Order Approving Compromise and Settlement Agreement (the "Motion to Clarify") in which Debtors, for the first time, argue that they are entitled to the proceeds of the Webb County lawsuit. IBC objected to

both motions. A hearing was held on the Motion to Clarify on October 20, 2010, and the Court took the matter under advisement. A hearing was held on the Trustee's Turnover Motion on December 15, 2010, and the Court took the matter under advisement also.

## DISCUSSION

The Settlement Order provided for IBC to receive 75% of "[f]uture case revenues" and also provides "IBC" had and continues to have a valid, perfected security interest in all accounts receivable of Cantu and LOMC and in the real estate described in Exhibit A attached to the Compromise and Settlement." The Settlement Agreement, approved by the Settlement Order, grants IBC a post-petition lien on all lawsuit proceeds and expenses until IBC is paid in full. In reliance on the Settlement Order, IBC and Debtors took the following actions:

1. IBC withdrew its support of the Motion to Convert to Chapter 7.
2. IBC withdrew its Motion for Contempt.
3. The parties entered and agreed order on a Motion to Reconsider.
4. The parties entered an agreed order on the Objection to Claim of IBC
5. IBC withdrew its objection to Debtors' Motion to Sell certain real property.
6. IBC withdrew its objections and agreed to vote in favor of Debtors' plan after approval of the disclosure statement.
7. The Debtors' chapter 11 plan of reorganization was amended to incorporate the Settlement Agreement.
8. A lawsuit by Debtors against IBC was dismissed with prejudice.
9. An arbitration initiated by IBC was withdrawn.
10. An adversary proceeding was dismissed with prejudice.
11. IBC released certain lis pendens.
12. IBC credited its allowed claim in the amount of $275,000.00.
13. IBC advanced $150,000 to Mark Cantu for operating and living expenses.
14. IBC reduced the interest rate of Debtors' notes to 8%.

Debtors now contend that the conversion of their case to chapter 7 after entry of the Settlement Order renders the lien on post-petition receivables unenforceable. Debtors attempt to combine sections 348(d) and 552(a) of the Bankruptcy Code to argue that conversion to chapter 7 turns the Settlement Agreement into a prepetition lien on after acquired property which, under section 552(a), is unenforceable. 11 U.S.C. §§348(a) and 552(d).  The Court disagrees.

A debtor can agree to allow a creditor's lien on after acquired property to extend to property acquired post-petition.  To continue its prepetition lien on after-acquired property, a secured creditor "must obtain an order approving the continuation of its lien to after-acquired property." *In re Commercial Millwright Serv. Corp.*, 245 B.R. 585, 592 (Bankr. N.D. Iowa 1998), *see also In re Cross Baking Co.*, 818 F.2d 1027, 1029 (1st Cir. 1987)(stating Bank could have sought an order continuing its lien on after acquired receivables and such order would trump § 552); *In re Blackwelder Furniture Co.*, 31 B.R. 878(Bankr. W.D.N.C. 1983)(holding even though debtor's case was later converted, debtor's plan ratified and revived the prepetition security agreement);  *In re Three Partners*, 199 B.R. 230, 239 (Bankr. D. Mass. 1995)(discussing § 552, "in order for a creditor with a prepetition lien to continue that lien in property acquired by a debtor post petition, it is incumbent on the secured party to obtain a court order granting a lien in post petition property"). This Court approved the Compromise and Settlement when it entered the Settlement Order.  Both specifically included provisions extending IBC's lien to post petition, post conversion receivables.

Moreover, a settlement agreement is akin to a binding contract, which cannot be disowned. *In re Spring Park Associates,* 623 F.2d 1377, 1380 (9th Cir. 1980); *See also, In re Mortgage Analysis Portfolio Strategies*, 221 B.R. 386, 388 (Bankr. W.D.Tex. 1998). "Federal Courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced." *White Farm Equipment Co. v. Kupcho*, 792 F.2d 526, 530 (5th Cir.1986), *citing Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967). It is well settled that once a settlement agreement is freely and voluntarily entered, "the actual merits of the controversy become inconsequential" in its enforcement. *Spring Park Associates, supra*. at 1380.

The Fifth Circuit has a strong policy of upholding valid settlement agreements. *See, In re Omni Video*, 60 F.3d 230, 233 (5th Cir. 1995)(stating "Litigants may not disavow compacts thus made and approved, for avoiding the bargain would undermine its contractual validity, increase litigation, and impair efficient judicial administration."). In the bankruptcy context, settlement agreements are particularly important. "[S]tipulations settling competing claims and compromises are strongly favored and should not easily be set aside." *In re Wilson*, 1988 Bankr. Lexis 811 *3 (Bankr. D.Mont 1988). Such agreements in "bankruptcy cases are necessary for the debtor to attempt reorganization and relief." *Id*. Bankruptcy courts routinely enforce settlement agreements. "A contrary result would tend to encourage delays similar to this one in future bankruptcy proceedings and discourage the use of settlements. *Spring Park Associates, supra*. at 1380.

In an unrelated appeal in this case the Fifth Circuit recognized the Settlement Agreement when it stated that "[a]ll of the proceeds from one case were pledged to IBOC, and 75% of all other post-petition cases were pledged to IBOC until its $2 million lien was paid in full." (docket #1937, page 4, lines 9-11). The Debtors' Compromise and Settlement Agreement with IBC is a binding contract, approved by this Court. The Settlement Order was never appealed and is a final order. Accordingly, the Debtors cannot rescind part of their agreement by citing inapplicable Bankruptcy Code sections.

## CONCLUSION

For the reasons stated above, the Court finds that the Debtors' Motion to Clarify Order Approving Compromise and Settlement Agreement should be denied subject to the mathematic calculations ordered below. Counsel for IBC shall prepare a final judgment in conformance with this Memorandum Opinion setting forth the exact amounts and proper apportionment of 75/25

between Debtors and IBC. If any additional sums are due to the Debtors, those funds shall be paid to the Trustee and the Trustee's Motion for Turnover should be granted only to the extent any funds remain owing to the Debtors. Otherwise the Trustee's Motion for Turnover should be denied.

SIGNED 01/18/2011.

Richard S. Schmidt
United States Bankruptcy Judge